Good morning everyone. Our last case this morning is a consolidated matter. The numbers are 4110850 and 4110994, River City Construction v. The Capital Development Board. We have Teresa Phelps for the appellant for the appellee, Brett Legner, and Michael Wilson. Have you guys split your time? You're both going to argue? We have, Your Honor. We've split it in half. Very well. Please proceed. May it please the Court, Counsel. My name is Teresa Phelps and I represent River City Construction in this appeal. This case is a relatively simple case that has become very complicated by a series of procedural errors by the Circuit Court. At the heart of this appeal is whether the Capital Development Board, who I'll refer to as the CDB in this appeal, a state agency, violated the competitive sealed bidding procedures of the Illinois Procurement Code when it let and awarded a state contract for a $25 million construction project known as the Metro East Forensics Lab. River City was the lowest bidder on the project and Contegra was the second lowest bidder. There's no dispute in this appeal that River City was the lowest bidder or that River City was a responsible bidder. This appeal involves the issue of whether River City's bid was responsive. The CDB rejected River City's bid as non-responsive based upon a purported requirement that was not set forth in the bid documents. The CDB has taken the position that a protected subcontractor listed on the bid must actually self-perform the identified trade work. Because one of River City's protected subs was not planning on self-performing the identified plumbing work but instead was going to subcontract that out to a lower tier sub, the CDB determined that this was unacceptable and rejected River City's bid on this basis as non-responsive. Importantly, the bid documents did not require a protected sub to self-perform the identified trade work. So River City filed the first lawsuit asserting claims for declaratory relief, injunctive relief, and judicial review of an administrative decision. River City alleged that the CDB reviewed and rejected River City's bid as non-responsive based upon a requirement that was not set forth in the bid documents in violation of the Procurement Code. The Circuit Court initially granted a preliminary injunction but later dismissed River City's claims under Section 2619 based upon the Circuit Court's belief that it did not have jurisdiction to review the CDB's decisions. The CDB thereafter awarded the contract to Contegra as the lowest responsive and responsible bidder. Thereafter, River City filed Lawsuit No. 2. And in this lawsuit, River City challenged the award of the contract to Contegra. River City alleged that applying the CDB's own standards of responsiveness, the CDB should have rejected Contegra's bid as non-responsive because Contegra also listed a protected sub who did not plan on self-performing the identified trade work. The Circuit Court dismissed Lawsuit No. 2 at the outset based upon the doctrine of res judicata and construction began on the project while the appeal proceedings were occurring. And here we are today. Some of the work on the project has been done but there is still a significant amount of work left to be done on the project. I intend to make three points today. First, that the Circuit Court erred in dismissing River City's claims in Lawsuit No. 1 because the complaint stated claims that were cognizable under Illinois law and the claims were not barred by any other affirmative matter. Point No. 2, the Circuit Court erred in dismissing River City's claims in the second lawsuit under the doctrine of res judicata because the facts giving rise to the claims in Lawsuit No. 2 did not occur until after the judgment was entered in Lawsuit No. 1. And third, this appeal is not moved because there are still several forms of relief available on remand. Turning to my first point, the Circuit Court erred in dismissing River City's claims in the first lawsuit. The claims were dismissed at the pleading stage. The court had not considered any evidence and the dismissal was based solely upon the allegations in the complaint. The complaint was never answered by the CDB or Contegra. So all of the references in the briefs and any references to evidence that you may hear today in these oral arguments don't matter for purposes of this appeal. The questions in this appeal are, did River City's complaints state claims cognizable under law? And if so, were they barred by any other affirmative matter? The complaint did state claims that were cognizable under law. The complaint sought three forms of relief, declaratory relief, injunctive relief, and judicial review of an administrative decision. The law is very clear in Illinois that courts can restrain, compel, or enjoin state agencies and review final agency decisions where there are allegations that the agency has abused its discretion, acted arbitrarily, capriciously, or fraudulently, with unfair dealing or unlawful favoritism, or in excess of its authority. Those are precisely the allegations in this case. River City alleges that the CDB exceeded its authority and failed to comply with the procurement code when it reviewed and rejected River City's bid based upon a criteria that was not in the bid documents. The procurement code prohibits this. So the allegations were sufficient to survive a motion to dismiss. The complaint stated claims cognizable under Illinois law. These claims were not barred by any other affirmative matter. One of the big issues in this appeal is the issue of discretion. Did the CDB's actions involve the exercise of discretion? Again, the issue is the responsiveness of River City's bid. The Circuit Court never reached the merits of this determination, never looked at the bid documents or determined what was in them. The issue of responsiveness of River City's bid does not involve the exercise of discretion. In determining whether a bid is responsive under the procurement code, the CDB can only consider two types of criteria. First, objective criteria. The code says the criteria must be objectively measurable, not subjective. Discretion involves something in the nature of subjectivity, not objectivity. So if the criteria has to be objectively measurable, it follows that there is no issue of discretion in reviewing those criteria. Second, the CDB can only consider criteria that is actually set forth in the bid documents. The code is very clear on this. River City alleges that the requirement, the self-performance requirement that we talk a lot about in the briefs, was not in the bid documents. If that was not in the bid documents, the CDB has absolutely no discretion to review the bid for responsiveness based upon that criteria that was not in the bid documents. The CDB takes great liberties with language of the procurement code. We see a lot of reference to the best interest determination. Now the issue of responsiveness of a bid has zero to do with the best interest of the state. Now the state certainly has best interest in determining what criteria to include in the bid documents, but once those criteria are in the bid documents, those criteria have to be objectively measurable. How do you determine if a bid is responsive? You look at the bid documents and see what was required, and you do a matter of comparison. The best interest determination just is not applicable here. There is also some reference in the briefs to what I will call the 10G exception. I'm not sure I follow what you're saying there. Okay. If a bid is not responsive, how could it be in the best interest of the state to award the bidder the contract? Right. If a bid is not responsive, then it wouldn't be in the best interest of the state. Well, that's what they found here. They said it's non-responsive, so isn't the inference that they have concluded wasn't in the best interest of the state to award the contract? Sure. The basis of them finding our bid was non-responsive was because of this self-performance requirement that the CDB alleges was in the bid documents. We allege it was not. So if the self-performance requirement is not in the bid documents, the CDB cannot review RiverCity's bid and reject it on that basis. Had they found RiverCity's bid was non-responsive because they failed to list the subcontractor amounts or something else that was in the bid documents, then certainly the CDB could reject that bid as non-responsive, and that would be a determination as to the best interest of the state. But because the self-performance requirement was not in the bid documents, they have no discretion to determine that. If that was something that was important to the CDB, they should have included that in the bid documents. That's what the procurement code requires, so that all bidders know exactly what objective criteria will be used to judge their bids. The 10G exception to award to other than the lowest responsive responsible bidder. There's references in all the parties' briefs as to this exception as well. It's not applicable here. The CDB never made any determination that this contract should be awarded to anyone other than the lowest responsive and responsible bidder. In fact, the CDB ultimately awarded the contract to Contegra as the lowest responsive and responsible bidder. So all of the references to this 10G exception to award to other than the lowest bidder are irrelevant. They don't apply. The 10G exception just was never triggered here. It doesn't apply. The CDB also cites to some language in the statute in the procurement code that allows the CDB to reject, quote, any and all bids. Now, this language is not as broad as the CDB would contend it is. In fact, the language does not allow the CDB to arbitrarily or capriciously reject a bid or to act with unfair favoritism or any other basis that provides judicial review in the courts. The language does not allow the CDB to pick and choose which bidders it likes or which bids it likes or doesn't like. The language just doesn't allow them to do that. In construing the power of the CDB under the procurement code, it's important to remember the purpose of the procurement code. The procurement code was enacted to tighten the reins and restrict the procurement authority in the state to make sure that the process was fair. The legislative history behind the code and the counterpart, the Illinois Purchasing Act, highlighted the many black eyes that the state of Illinois has taken as a result of corrupt and wrongful acts of its government officials. The procurement code was supposed to place limits on the CDB in procuring goods so that they knew these were the requirements, this is what we have to follow in order to procure goods. They had specific requirements and mandates that they had to follow. What's interesting is that the CDB is actually advocating for the exact opposite in this case. It's saying that this court should grant it unlimited power and unchecked discretion to disregard the requirements of the procurement code. Now, allowing the CDB to do that would just render the procurement code meaningless. There would be no reason to have it. Certainly, this was never intended by the legislature. The issues in this appeal just don't involve discretion exercised by the CDB. River City's claims are also not barred by sovereign immunity. This was another argument that was made by the other side. Under Illinois law, sovereign immunity does not apply to claims to restrain or enjoin state officials from acting in excess of their authority or compelling them to perform a recognized duty. These are the allegations in River City's complaint. River City alleged that the CDB rejected its bid based upon a requirement not in the bid documents in violation of the procurement code. The procuring code does not allow the CDB to do this. To the extent that the CDB did so, it was acting through its officials in excess of its authority. This gives us a basis for our injunctive relief claim, which is not barred by sovereign immunity. River City's claims for declaratory judgment and judicial review of an administrative decision also are not barred by sovereign immunity. The case law is clear on that. Because River City's claims do not involve the exercise of discretion, and because they are not barred by sovereign immunity, no other affirmative matter bars River City's claims, and the Circuit Court erred in dismissing these claims. Turning to my second point in lawsuit number two, the Circuit Court erred in dismissing River City's claims on the basis of grace judicata. Lawsuit number two challenged two things. It challenged the CDB's decision to accept Contagra's bid as responsive, and the CDB's decision to award the contract to Contagra as the lowest responsive and responsible bidder. Both of these acts did not take place until three weeks after the judgment in the first case was entered and after the notice of appeal had been filed in this court. So lawsuit number one was over when these acts took place. Under Illinois law, grace judicata only applies to the facts as they existed at the time the first judgment was entered. Because the acts giving rise to River City's claims in lawsuit number two did not take place until after lawsuit number one was already over, grace judicata does not bar them, and the Circuit Court erred in concluding otherwise. Turning to point number three, River City's claims are not moot. Contagra filed a motion to dismiss in this appeal, arguing that River City's claims are now moot because the contract for the project has already been awarded and because construction has begun on the project. River City filed its response, and this court has taken that motion with the case. The fact that the contract has been awarded on the project does not mean that River City's claims are moot. The Circuit Court can still enter some form of relief to address that contract. For example, the Circuit Court can issue a mandatory injunction requiring the CDB to rescind the contract because the contract was issued in violation of the Procurement Code. The Circuit Court can also issue a declaration that the Contagra contract is null, void, and invalid.  How can you rescind a contract if the contract is already in force? I think, Your Honor, the problem here is that Contagra and the CDB were both parties to the proceedings below and knew that this issue was not finished. So they proceeded on that contract at their own risk, and I think that the court still has the authority to issue relief and say that that contract is null and void. In fact, some of the cases that we cited from the other jurisdictions, there's no Illinois case on this point, some of the other cases that we have cited from other jurisdictions in our response brief have done just that. They said they could issue the declaration that the contract was null and void, and they would allow the person who was performing under the contract to recover in quantum merit for the work that had been performed to date, but they were not allowed to recover under the contract because the contract was invalid. It shouldn't have been issued. We think that the Circuit Court can still do that in this case as well. And the fact, you brought up another point, the fact that construction has begun. I don't think that this moots out River City's claims either. At the time of briefing on the motion to dismiss, the project we had estimated was less than 10% complete. As of last Friday, River City estimated that the project was approximately 20% complete. So there's still 80% of the project left to be done. That's a lot of work on a $25 million construction project. The Circuit Court still has the ability to enter some kind of relief to address the issues in this appeal. Again, for instance, the Circuit Court on remand can issue a preliminary injunction prohibiting the work further pending final judgment on the merits. The Circuit Court can enter a permanent injunction after final judgment on the merits prohibiting the CDB or Contegra from proceeding with the project under that July 2011 bid. The Circuit Court can require the CDB to re-bid the remaining work to the extent that the project goes forward. That's an important point I want to point out. River City is only asking for relief to the extent that the project goes forward. The CDB has the power to terminate the project, to stop the project, to say we don't want to do it anymore. They have that power. We don't dispute that. But to the extent that that project goes forward, the procurement code requires the CDB to award the contract to the lowest responsive and responsible bidder. In this case, River City alleges that they were the lowest responsive and responsible bidder. To the extent that River City can prove that in the Circuit Court, it's entitled to that contract. We also cited some cases... One other remedy that the Circuit Court can order is that River City gets to step in and take over on the contract. I think River City could do that relatively quickly. I don't think that would require a whole lot of time or delay in doing that. We also cited some cases in our brief that have contemplated the award of monetary relief in situations like this, where injunctive relief or non-monetary relief is no longer effectively available. Some of those courts have thrown out the idea of taking away the profits from the person who was awarded the contract that should not have been awarded the contract, and giving those profits to the person who should have been awarded the contract, under the theory of quantum merit, again, that they're not entitled to the profits. Other courts have allowed recovery of bid preparation costs or bid protest costs, where injunctive relief is no longer available. So there's still a lot of things that the Circuit Court can do to remedy the harms in this case on review. It's also important to note that River City has, at every opportunity, requested interim relief to maintain the status quo to preserve its remedies in this case. We have opposed every request for delay. We have moved to expedite these appeals. We've done everything in our power to try to keep us in a position where the Circuit Court can give us relief on remand if we are successful in this appeal. And at the end of the day, this is a case in equity. The Circuit Court has broad equitable powers to fashion equitable relief, both preliminary relief and remedial relief upon final judgment. We believe that the Circuit Court still has the power to grant River City some form of relief in this case. We believe that this court can give the Circuit Court some direction as to the power of the court to enter relief to remedy the harms in this case. With that, I will sit down. All right, you'll have rebuttal. Please proceed. Good morning, Your Honors. May it please the Court, Counsel. My name is Brett Legner. I'm an Assistant Attorney General, and I represent the State Appellees in this matter. Your Honors, this Court should affirm the dismissal of River City's two complaints. I'm going to address sovereign immunity as well as the reviewability of the contract award decision, and then my co-appellee will take the other issues. But I would like to first address a couple points. Counsel has very much, I think, misunderstood and misexplained the process and the CDB, the Board's role, as well as the relief they're actually requesting. It is not the case that the Circuit Court has broad equitable power to fashion mandatory injunctive relief against the State. It is not the case that the Circuit Court has the power to review an award of a public contract absent allegations of fraud or corruption or illegality that simply aren't there in this case. Let's cut to the chase. Yes. You've got two bids that, according to the appellant, have the same deficiency in terms of having a subcontractor for part of the work. Why? What's the difference between the two, other than one's more expensive than the other? The difference between the two is the Contagra contract, the subcontractor at issue. All of the subcontractors on the Contagra bid were going to self-perform 40% of their work. They weren't going to sub it out to a second sub more than 60%. That's the requirement of the bid documents. In the River City bid, their plumbing subcontractor, Custom Mechanical, was going to perform no plumbing work. Instead, they were going to sub it out to a subcontractor that's not board pre-qualified. Essentially, they were seeking to do an end-runaround to the board's pre-qualification rules. The documents attached to the complaints that are in the record show that the board engaged in, regarding how much of their work are they going to self-perform. Are they going to self-perform 40%? They came back with documents breaking down their bid and doing the line items and showing we are going to perform at least 40%. The standard documents for construction, which by their terms are incorporated into every contract, and they specify that any time anybody submits a bid to the board for contract, they will be in compliance with the standard documents for construction. The standard documents for construction provide that each contractor will work with its own staff. For every other separate contract, such as plumbing, relevant to this case, they will perform 40% of the work. They will self-perform 40% of the work. That's an element of the standard documents for construction. Therefore, that's a bid requirement, and it's explicitly incorporated into the bid requirements and the contracting requirements by the terms of the standard documents, which at multiple points state in no uncertain terms that they apply to all Capital Development Board projects, that all bids must be in compliance with the terms of these. It's okay to have subcontractors as long as those subcontractors perform 60% or less of the work and the primary performs 40%. Essentially, yes. And the sub has to be pre-qualified. And the sub should be pre-qualified, yes. Should or must? Okay. Let me just, to clarify, there's a couple different ways of bidding these documents, or bidding projects. Projects can be bid to one contractor overall, or projects could be bid to a separated, to several different, to the protected different classes. In this case, it was bid to a contractor who then had to specify the subcontractors in this five specific fields, including plumbing as relevant to this. In that case, the subcontractor that specified must be board pre-qualified and must perform 40% of its work. And the sub-sub, or whatever the language is there, would only be permitted to perform 60%? Up to 60%. Up to 60%. Right. That's exactly right. And I know this how? Other than how you, other than you telling me. Other than my well-reasoned brief, it is. Yes, yes, your well-reasoned brief, which is based upon all this comes from the documents that you refer to. The standard documents for construction, which are incorporated into the bid. And which itself is publicly available. So what if the board's determination was wrong about whether River City's bid was responsive? If there's no, they say it, that's it? So long as there was, so long as there was no illegality or favoritism or corruption or fraud, then that is it. It is not otherwise. So the board can be wrong, and unless there was fraud or corruption involved, it doesn't make any difference. River City's just. That's correct. Out of luck. That's correct. No remedy. No remedy. That's consistent with, or at least no remedy against the state. And that's consistent with the long line of cases. You know, the Keith Shea case. Even the County of Tazewell Court Steakhouse case, which state that when there is an issue with an award of a public contract, they will, you can bring that claim when you're claiming fraud, when you're bringing, claiming illegality. But there are other militating concerns at work here, such as public construction contracts and public construction projects need to go forward. So absent fraud or illegality, the balance goes towards completing the project. This is an important project. The state police don't, the state police need a new lab. Their current lab has them with an enormously years-long backlog on analyzing forensic evidence. So there are public policy considerations in moving public construction projects forward. There's public policy considerations in accepting the lowest responsible and responsive bid. That's true. And the statute, meaning the procurement code, and the administrative regulations, as well as the standard documents for construction, all state that simply accepting the lowest responsive and responsible bid can result in false economies. That's why they all contain the best interest language, which specifically states that even when a bid is the lowest responsible and responsive, when in the best interest of the state the determination is made. The board did not invoke this best interest of the state. The board did not explicitly invoke the best interest. But the point of that is because that best interest of the state is not cabined by any objective parameters, this entire class of decision is removed from review of the law. So did the board comply with the statute? Yes, the board complied with the statute because they did not comply, they were not responsive, because they did not comply with the requirement that their name sub for plumbing would self-perform 40% of its work. It admitted it was going to self-perform 0% of its work. And instead they were doing an end-to-runaround, the pre-fault qualification rule. But you're saying it wasn't in the best interest. They're asking for a hearing for a tribunal to decide if it was. And there are no objectives or criteria. They're just saying, we want to hear it. You're wrong about whether it was responsive. You're saying, no, there's got to be fraud. That's correct. That's correct. And the case is the Keepshake case. The State House case, I'll support that. I would also add that the specific relief they request, an injunction requiring the state to issue them a contract, or an injunction enjoining the state from contracting with Contagra, are explicitly barred by sovereign immunity. The court cannot order the state to contract with a particular party. This is not a normal administrator review case. Suppose they allege fraud. Yes. They file with the circuit court. Okay, they go to the circuit court. Now, is your co-counsel going to agree with that? Well, if they allege fraud, they can bring a claim. I'm not saying that's cognizable in the circuit court, because still they are bringing a claim based on state law, asserting contract rights against the state. And both of those situations are explicitly barred by sovereign immunity as well. But it could be a claim that's cognizable somewhere. Okay. And I'm out of time. I would just briefly add that Granville Construction is absolutely on point. It's the Granville Construction case that I cite in my review. It's absolutely on point on the sovereign immunity case. Which case? Granville Construction. Okay. All right. Thanks for your argument. Thank you very much. Good morning, Your Honors. Good morning, Counsel. May it please the Court. I'm Mike Wilson. I represent Contagra Construction. And I think there's some interesting points that have been raised already by the Court. I'd like to try to address some of those points. I had planned to talk about four particular arguments we have in our brief. If I get a chance, I will discuss those. But I think it's important to understand. In the first cause of action, attached to the amended complaint and the original complaint, filed by River City, was the July 18th letter by Mr. Broughton of the Capital Development Board, CDB. That letter states facts and conclusions. To the extent there are conclusions, to the extent there are conclusions in the body of the pleading, we should ignore those for purposes of whether a cause of action is stated. But I think it's very important to review that July 18th letter. It was attached to the complaint. There wasn't any allegation in the complaint by River City saying, well, those facts are untrue. We allege something contrary to those facts. They had conclusions that may be contrary but not facts. The facts are, in that letter, that Wells Plumbing was originally identified as the plumbing subcontractor in the bid. Actually written into River City's bid. The invitation for bids required a pre-qualification number from the subcontractors. I think it's fair to conclude from that, the fact is pre-qualification numbers were a prerequisite. I think it's fair to conclude that they had to be pre-qualified, the subcontractors. Not just the prime contractor, but for those five trades. Plumbing, ventilation, the other three trades, electrical, so on. Wells Plumbing was not. It's very apparent that CBB does its typical post-bid investigation to determine who's the lowest responsive, responsible bidder. And they determined that Wells Plumbing obviously was not pre-qualified, so Custom Mechanical came in. They were added to the bid before the bid was submitted. But they are not a plumbing contractor. They're not even licensed to perform plumbing work in the state of Illinois. They're not licensed to oversee the second tier subcontractor. That would actually be illegal for them to act in a capacity of having the performance of plumbing. It's one thing to be a general contractor and have multiple trades and sub it out, but to actually have the responsibility over the plumbing. We have an Illinois plumbing code in the state of Illinois. It applies to these capital development projects in general. That's a very important code. You want to have a pre-qualified plumbing contractor to perform that work. River City did not. So I think that answers one of the... It's not just the self-performance. We hear that argument in River City's brief that that's the main problem. The main problem was identifying somebody who wasn't going to do the work but also didn't have the authority to act as a plumbing contractor. They are not a true plumbing contractor. In fact, you can read from the letter, and therefore the first cause of action did not state a cause of action. Because the predicate to all their claims was that River City was responsive. River City was not responsive for that reason, and CDB rejected it. Now what if they're wrong? I think that's a good question. The Illinois procurement code does provide, I think it's section 70, and it's in the appendix to River City's brief, does provide that the decision of the procurement officer, chief procurement officer, is final and conclusive, I think are the words, except if it's clearly erroneous, arbitrary, capricious. In my view, arbitrary and capricious are basically one and the same. I oftentimes hear the expression arbitrary and capricious. I think my wife uses it against me, but anyway. And then also contrary to the law. Those are the elements that are in the appendix. So in my view, I think that does provide some limitation on the Capital Development Board's authority. Now my position is if they abuse that discretion, because there is discretion in this procurement code, I want to talk about that. But if they abuse that discretion, if they make a clearly erroneous decision, I don't think this is clearly erroneous. I think it could be debated, and River City can make a good argument, and we can make a good argument, but if it's fairly debatable, it's not arbitrary and capricious, it's not clearly erroneous, and there's no violation of the law here, if there's an arguable basis for which it is responsive. So I think that eliminates the first cause of action. But we've also said, and after further thought, I will acknowledge that in terms of asking for injunctive relief in the second cause of action, while I don't think there's a practical remedy there, in theory there is, but the first cause of action is moot. The first cause of action is clearly moot. In order for what the court would have to do, or the circuit court, would have to now declare what River City asked, which was find River City's bid to be the lowest responsive and responsible bid, and not reject their bid, and award them the contract. The contract, as we've indicated in our motion and the papers in support, has already been awarded. You can't undo the bell, as we say. The contract has been partially performed. We don't disagree with the approximate 20% assessment. You can argue a little bit. There's stored materials and all that. Trying to undo that would be horrific, but the point is, I think the first cause of action is moot. I don't think there's any way anything can be done under that first action. Second action, with respect to injunctive action, I will concede, we argued mootness. I'm going to concede that it's not. Now, statutes, though. Before you move on, I want to make sure I understood what you said. If the board's decision, if it's alleged that the board's decision was arbitrary and capricious, what does River City do? How do they proceed? Where do they go? The circuit court? Justice Turner, my view, as stated in the brief, is that they have to go to the Illinois Court of Claims. There are appellate court cases that say that the Illinois Court of Claims Act covers all claims against the state. Now, there are some exceptions, and there are some exceptions statutorily codified in there. And in that act and in the Illinois Procurement Code itself. I'm sorry, in the Sovereign Immunity Act. And we cite that in our brief. The point is, though, that there is a remedy, and the remedy is to go to the Illinois Court of Claims. And if the Illinois Court of Claims doesn't provide the right remedies, there's remedies for that. But that's the first step. They've made the first misstep. I don't think your honors have jurisdiction, because I don't think the circuit court has jurisdiction. And I hate to tell a judge they didn't have the power to do something. That's not always worked out well. But I really do think that you don't have subject matter jurisdiction. I think the Attorney General's position is that had there been allegations of fraud, River City could have used a greater certiorari to get to the circuit court, which I was kind of asking about that, and I saw you shaking your head. You don't agree with that either, do you? Well, I haven't thought about that theory of fraud. But I don't think there's allegations of fraud in here. I will concede that that might be possible. I just haven't thought about that. But the point is the allegations really don't even allege arbitrary and capriciousness. In terms of facts, what they do allege is here's a letter from CDB, and there's nothing wrong with what's in that letter. I don't think that's arbitrary or capricious. That letter of July 18th that's attached is key. Now, as to what we covered on the AMSCO side on the second clause, there is a big distinction. Your Honor, Justice Appleton, you asked about it. Well, they're saying it's the same thing. The fact of the matter in the pleadings, because of the letter that's attached, is that AMSCO was going to self-perform. They have over three-quarters of a million in materials, and they have $167,500 in labor. That's a definition of a subcontractor who's going to perform. Not necessarily all the work, but they're going to perform. And CDB explained that their prequalification requirement is to make sure they knew who the subcontractor was, they were prequalified to do work for CDB, and in that trade, I mean, that's the implication. And for you to put up somebody because you can't put wells on, so let's find a vehicle to do, as counsel said, an end run, that's just not right. So there is no second cause of action. It's predicated on the self-performance theory when the letter that's attached, Exhibit 3, to that complaint makes it clear that there is going to be performance by AMSCO, the subcontractor. So that goes to the fact that I don't think there's a cause of action stated there, and I do think Grace Judicata was. The timing is very tight. But the fact of the matter is, as of just before the dismissal of the first cause of action, River City was aware of the facts in general of Contegra's bid, was generally aware that they had this issue about maybe that AMSCO wasn't going to self-perform anything either. They had time to amend. They actually filed a motion to reconsider. They could have filed a motion for leave to file a second amended complaint and added this cause of action saying in any event, no claim should be, Contegra shouldn't be awarded the contract. Thank you. Thank you. Rebuttal, please. The first and fundamental point I want to make here is that River City never got the chance to address the merits of its claim. This claim was thrown out at the motion to dismiss phase. This may be a very different case if we were up here on a motion for summary judgment or after a trial in the merits. Had the circuit court actually addressed the evidence and addressed the merits of the issues, this may be a different case. But that's not the case. We're here on a motion to dismiss. We never got a chance to address the evidence as to whether Contegra was actually going to self-perform the identified trade work. We never got a chance to address the issue of prequalification. In fact, the evidence down on remand would show that the CDB actually told River City that the identified subcontractors did not need to be prequalified. So then there's an issue of equitable estoppel. That's an issue that was never addressed in the circuit court because we never got to that point. We never got to argue the evidence. Mr. Wilson came up here and argued the evidence and what he thinks the evidence says and what he believes the inferences of the evidence are. But we never got to the evidence. Second, while the CDB is contending that review is limited to allegations of fraud, corruption, or illegality, that's contrary to the law that we cited in our brief. The scope is much bigger. In fact, even the procurement code itself provides for review and says that the decisions of the CDB are not final and conclusive where there are allegations that the conduct is arbitrary, capricious, contrary to law, or an abuse of discretion. So it's not limited to allegations of fraud and illegality. Third, this issue about the 20%, 40% that's in the standard documents of construction. First of all, we think that this language applies to multi-prime jobs, not single-prime jobs. Single-prime is what we have here where we have one contractor who has contracts with its five identified trades. Multi-prime is where the CDB has multiple contracts with several different contractors. That section in the standard documents for construction refers to contractors. There's no reference to subcontractors. There's reference to general contractors. There's no general contractors with single-prime jobs. In addition to that, even if that did apply to the single-prime job, the evidence would show that custom mechanical, the identified protected sub that's at issue with River City's bid, would have self-performed 40% of its contract, more than 40% of its contract with River City. The standard documents for construction require 40% of every separate contract. Custom would have had one contract with River City for each of the protected trades together that it submitted that package bid for. And it would have self-performed more than 40% of that. But again, River City never got the chance to address that in the circuit court. Justice Turner did hit the nail on the head when he said the CDB is essentially arguing that they're done. You're wrong, but it doesn't matter. There's nothing you can do about it. Essentially, the CDB is arguing that this court is an inferior tribunal that can't do anything about what the CDB does or doesn't do. And I don't think that that's what the law says. With respect to remedies, while things have changed since the lawsuits were dismissed, we do acknowledge that. And I think that because our claims were dismissed out on a motion to dismiss, if this case is remanded back to the circuit court, certainly we should be given the opportunity to amend our remedies, to delete the things that are no longer available, and to add things that maybe are available at this time in light of the changed circumstances. The procurement code is clear. The CDB cannot review a bid for responsiveness based upon any criteria not set forth in the bid documents. We allege the CDB did so in violation of the procurement code. The CDB must comply with the procurement code. And if this court doesn't have the authority to require it to do so, nobody does. The procurement code is not a suggestion, and it's not optional. The CDB's procurement power is not unlimited or unreviewable. For all of these reasons, we ask that the circuit court's orders dismissing River City's claims in both lawsuits be reversed, and that River City's claims be remanded to the circuit court for entry of appropriate preliminary injunctive relief and for trial on the merits. Thank you. Thanks to all three of you. The case is submitted, and the court will stand in recess until after lunch.